IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LORA LYNN CIESZYNSKI,

               Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

               Defendant.

OPINION AND ORDER

21-cv-10-slc

Plaintiff Lora Lynn Cieszynski seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration,[1] finding her not disabled within the meaning of the Social Security Act. 42 U.S.C. § 405(g). Cieszynski contends that the administrative law judge (ALJ) who denied her claim erred in evaluating the medical opinions of her treating physician (Dr. Bruce Boyd) and two consultative examiners (Drs. Eric Linford and Mark Pushkash). Because I am not persuaded that any of the issues raised by Cieszynski warrant remand, I am affirming the Acting Commissioner's decision denying Cieszynski benefits.

**FACTS**

The following facts are drawn from the Administrative Record (AR), filed with the Commissioner's answer in this case:

Cieszynski initially applied for disability insurance benefits on June 11, 2013, ultimately alleging a disability onset date of October 24, 2013 due to back pain, fatigue, anxiety, and depression. AR 183, 197, 711, 742-43. After Cieszynski's application was denied initially and on reconsideration, ALJ Kevin Vodak held an administrative hearing on May 9, 2016. AR 19.

---

[1] Because Kilolo Kijakazi has replaced Andrew Saul as the head of SSA, I have amended the case caption accordingly.

ALJ Vodak issued a written decision on July 5, 2016, finding that Cieszynski was not disabled. AR 32. Cieszynski successfully appealed that decision in the United States District Court for the Eastern District of Wisconsin, which entered an order remanding Cieszynski's case on January 18, 2019. AR 826-32. On remand, the Appeals Council directed the new ALJ, Chad Gendreau, to reevaluate and weigh the medical opinions of Dr. Boyd (treating physician), the state agency physicians, and Dr. Linford (consultative examining orthopedist); reevaluate Cieszynski's mental ability to work given her moderate difficulties in concentration, persistence, or pace; explain the basis for any finding of off-task behavior; and reevaluate Cieszynski's symptoms. AR 711. Following a second administrative hearing on September 17, 2019, ALJ Gendreau issued a an unfavorable decision on October 30, 2019. AR 711-24. That decision is the final decision of the Commissioner.

ALJ Gendreau determined that Cieszynski is severely impaired by degenerative disc disease of the cervical and lumbar spine, depression, anxiety, and ADHD but that she retained the residual functional capacity (RFC) to perform a limited range of light work. AR 714-15. Specifically, he found that Cieszynski had the following limitations: frequent climbing of ladders, ropes, scaffolds, ramps, and stairs; frequent balancing, kneeling, crouching, and crawling; occasional stooping; performing simple, routine, and repetitive tasks and simple work-related decisions; frequent interactions with supervisors; and occasional interactions with coworkers or the public. AR 715.

In reaching this decision, the ALJ considered but was not persuaded by Cieszynski's self-reported symptoms, which all but precluded her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, concentrate, understand and follow instructions, and to get along with

others.  AR 716.  The ALJ also considered the opinions of record, which included the opinions of Dr. Boyd, Dr. Mark Pushkash (consultative examining psychologist), Dr. Linford, and the state agency medical and psychological consultants (Drs. Luis Zuniga, Pat Chan, Barry Rudnick, and Susan Donahoo).  AR 718-20.  The ALJ gave the most weight to the opinions of Dr. Pushkash, who did not find any work limitations, and the state agency medical and psychological consultants, who found Cieszynski capable of unskilled, light work.  *Id.*  He found Dr. Linford's and Dr. Boyd's opinions regarding Cieszynski's disabling physical symptoms inconsistent with her course of treatment.  *Id.*  Relying on the testimony of a vocational expert, the ALJ found that Cieszynski could perform work in the representative occupations of marker, checker I, and router.  AR 723.  After the Appeals Council denied Cieszynski's appeal, she filed her appeal in this court.

## OPINION

In reviewing an ALJ's decision, I must determine whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).  This deferential standard of review means that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. Apr. 14, 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)).  We also do not "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision.  Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d

3

718, 721 (7th Cir. 2014) (citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

All of Cieszynski's challenges in this appeal are directed at the ALJ's evaluation of the medical opinions of her treating physician and two consultative examiners. Under the rules applicable to Cieszynski's claim, the ALJ is required to consider the persuasiveness of each medical opinion—regardless of its source—focusing on support from the objective medical evidence and consistency between medical and non-medical sources. *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019); 20 C.F.R. § 404.1520c.

Cieszinski argues that the ALJ's RFC assessment of Dr. Boyd's opinion is defective because the ALJ: (1) failed to recognize that diagnostic imaging of Cieszynski's cervical spine supported Dr. Boyd's opinion; (2) mischaracterized records as suggesting that her back pain improved with certain treatment, without acknowledging that the pain relief was temporary; and (3) failed to assess the degree to which Dr. Linford's opinion corroborated Dr. Boyd's opinion. Cieszynski also argues that the ALJ failed to provide good explanations for rejecting Dr. Linford's opinion and a statement made by Dr. Pushkash.

## I. Dr. Boyd's Opinion

On April 26, 2016, Dr. Bruce Boyd wrote a letter stating that he had been treating Cieszynski since September 2014 for degenerative disc disease of the cervical and lumbar spine,

as evidenced in her MRI scans.  AR 699.  He noted that Cieszynski initially had a decreased range of motion in her lumbar spine in all directions and a paralumbar muscle spasm for which he recommended pain management.  *Id.*  Although Dr. Boyd noted that steroid injections and oral medications provided Cieszynski with some symptom moderation, he opined that Cieszynski would have significant limitations associated with full time work: she likely would be limited to part time employment where she had the flexibility to determine how long she could sit, stand, or walk at one time; she should avoid repetitive bending or twisting at the waist and should not reach or grasp with her upper extremities more than occasionally; she should avoid repetitive flexion, extension, rotation, or static positioning of the neck and head; and she could not lift more than 10 pounds occasionally.  *Id.*

The ALJ gave little weight to Dr. Boyd's April 2016 opinion because he found it to be inconsistent with Cieszynski's course of treatment, which included receiving some benefit from steroid injections, chiropractic treatments, and medication; no recommendation for surgery or other more aggressive treatments; and no treatment after June 2016.  AR 717, 720 (citing AR 669 (January 2015 report that low back pain temporarily improved and was 60% better following steroid injection) and AR 697 (February 2016 report of some relief from three chiropractic treatments)).

Cieszynski takes issue with the ALJ's finding regarding her improvement because, like the previous ALJ, he failed to acknowledge that the treatment notes stated that her pain relief was temporary.  *See* AR 669 (pain relief temporary) and 672 (pain improved by 70% for 3 hours). In granting the parties' joint motion for remand during Cieszynski's initial appeal, the Eastern District of Wisconsin found, and the Commissioner agreed, that the ALJ relied on this evidence

of improvement to discount Cieszynski's subjective symptoms without acknowledging that the treatment notes stated that her pain relief was temporary.  AR 829.  Although ALJ Gendreau did not do much better than the first ALJ in noting that Cieszynski's pain relief from the steroid injections was described as temporary, he stated correctly that Cieszynski received "some relief" from the injections and recognized her subjective reports that she still had significant pain even several years later.  AR 716-17.

In any event, the ALJ did not rely solely on Cieszynski's temporary improvement in discounting Dr. Boyd's opinion.  The ALJ found it significant that Cieszynski received little or no ongoing treatment for back pain after June 2016, when she walked out of a pain management clinic that refused to give her narcotic medication.[2]  AR 717, 720, 743-45 (Cieszynski's hearing testimony).  Cieszynski has not challenged this finding.  In fact, she confirmed at the hearing that apart from prescribing Cymbalta, which helped her pain, Dr. Boyd did not provide her with any other treatment after June 2016.  AR 744-45.

---

[2] When Cieszynski sought treatment for low back and neck pain from a pain management clinic on June 8, 2016, the clinic provider told her that she was not a candidate for narcotics because she had a history of positive urine screens, lost or stolen medication, taking other people's prescription medication, and chronic benzo use with consistent early refills every month for the last year.  AR 717 (citing AR 1051, 1054-55).  Rather than pursuing non-narcotic treatment, Cieszynski stated "Well I am done, the only reason I came here was for hydrocodone and if you are not going to give me that I do not need to be here."  AR 1055.

The ALJ concluded that this evidence suggested that Cieszynski was dependent on painkillers and engaged in drug seeking behavior, which might have fueled her complaints.  AR 717.  Cieszynski has not challenged this finding related to her credibility and would have little ground to do so.  *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("ALJ did not err in considering the evidence that Moore's emergency room visits may have been related to an addiction problem rather than evidence of debilitating migraines."); *Elder v. Berryhill*, 774 F. App'x 980, 983 (7th Cir. 2019) (claimant's drug use, possible malingering, and drug-seeking behavior substantially supported ALJ's finding that claimant was not credible); *Kellems v. Astrue*, 382 F. App'x 512, 515 (7th Cir. 2010) ("Several cases approve discounting the testimony of a claimant who has engaged in drug-seeking behavior," which generally means "obtain[ing], or attempt[ing] to obtain, pain medication by deceiving or manipulating a medical professional.").

Cieszynski also argues that the ALJ failed to evaluate the degree to which other evidence corroborated Dr. Boyd's findings.  First, Cieszynski argues that, given the moderate to severe degeneration shown on her October 2014 MRIs,[3] "[o]ne would have expected the new ALJ to . . . [conclude] that the level of degeneration the imaging shows establishes that [she] is limited to part-time work," as Dr. Boyd recommended.  Dkt. 29 at 13.  Second, Cieszynski contends that the ALJ should have given more weight to Dr. Boyd's opinion because it is consistent with Dr. Linford's January 2014 opinion that she would not tolerate prolonged sitting, standing, or lifting heavy loads repetitively.  However, the ALJ discussed both the diagnostic imaging results and Dr. Linford's opinion and found that when considered in conjunction with the other evidence of record, they did not support the level of limitation assessed by Dr. Boyd.  *See Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("[A]n ALJ need not discuss every detail related to every factor. . .  And the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence.").

Next, as discussed in the next section of this opinion, Dr. Linford opined generally on the basis of a largely unremarkable exam that Cieszynski would not tolerate "prolonged" sitting, standing, and lifting heavy loads repetitively.  Even if his statement is somewhat corroborative of Dr. Boyd's opinion, Cieszynski fails to acknowledge an important part of the ALJ's reasoning in discounting both Dr. Boyd's and Dr. Linford's opinions:  Cieszynski did not receive further treatment for her back pain after June 2016.  Accordingly, the ALJ stated a good, well-founded reason for discounting Dr. Boyd's opinion.

---

[3] On Cieszynski's initial appeal, the Commissioner admitted and the Eastern District of Wisconsin found that the first ALJ mischaracterized Cieszynski's MRIs as showing only "mild to moderate" degeneration.  AR 827.  On remand, ALJ Gendreau corrected that mistake and properly characterized the MRI results.  AR 716-17.

## II.  Consultative Examiners

Cieszynski contends that the ALJ did not provide a good explanation for rejecting:  (1) Dr. Linford's opinion that Cieszynski "would not tolerate prolonged sitting, standing, lifting heavy loads repetitively," AR 412; and (2) Dr. Pushkash's statement that Cieszynski "describes difficulty coping with day to day stress because of anxiety and depression. All of this persists despite the fact that claimant is taking psychotropic medication," AR 407.  Although the Commissioner argues that Cieszynski is incorrectly applying the standard for analyzing treating source opinions to the ALJ's review of consultative assessments, the Court of Appeals for the Seventh Circuit has held that when an ALJ rejects the opinion of the agency's own doctors, he must have a good explanation for doing so.  *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *see also Czarnecki v. Colvin*, 595 Fed. Appx. 635, 642 (7th Cir. 2015) ("[R]ejecting or discounting the opinion of the agency's own examining physician . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step.").  In any event, as discussed below, the ALJ provided a good explanation for rejecting both doctors' opinions.

### A.  Dr. Linford's Opinion

Dr. Linford evaluated Cieszynski's physical condition following a consultative examination in January 2014, finding that she "would not tolerate prolonged sitting, standing, lifting heavy loads repetitively."  AR 412.  The ALJ gave the opinion only limited weight because:  (1) Linford did not provide any specific limitations or explain the rationale for his

8

conclusions; (2) Cieszynski had a positive response to steroid injections, medication, and chiropractic treatment; and (3) Cieszynski had little or no treatment after she terminated pain management in June 2016.  AR 720.  In addition, the exam itself contained a variety of normal findings:  Cieszynski reported that she was able to walk multiple blocks at a time, was in no acute distress, had full range of motion in her upper back, had full muscle strength in all muscle groups, had intact sensation, was able to arise from a chair and get on and off the exam table independently, exhibited good grip strength, and could reach overhead.  AR 410-11.  Although Dr. Linford noted that Cieszynski's x-rays revealed degenerative changes throughout her lower lumbar spine, he did not identify any specific limitations to account for the degeneration.  AR 411.

Cieszynski argues that the ALJ should have been able to estimate what Linford meant by "prolonged," but even she fails to identify what specific limitations would have been appropriate given the record.  *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) (claimant bears burden of proving she is disabled); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (A claimant is not entitled to remand if she "does not identify medical evidence that would justify further restrictions.").  She also argues that the ALJ had an obligation under 20 C.F.R. § 404.1519p(b) to recontact Dr. Linford if he had any concerns about the specificity of the opinion.  *See Paul v. Berryhill*, 760 F. App'x 460, 464 (7th Cir. 2019) (suggesting ALJ could have contacted consultative psychologist if he thought 6-page narrative report was vague or not specific in terms of functioning as he stated in his decision).

There is no indication that the ALJ found Dr. Linford's opinion incomplete.  In fact, 20 C.F.R. § 404.1519n(c) makes clear that "the absence of a medical opinion in a consultative

examination report will not make the report incomplete." *See also Stephen A. M. v. Comm'r of Soc. Sec.*, 2020 WL 818875, at *5 (S.D. Ill. Feb. 19, 2020) (Because "[t]he agency does not require a consultative examination report to contain a function-by-function assessment, i.e., an RFC assessment," the examining physician's "reports are not 'inadequate or incomplete' within the meaning of § 404.1519p(b).").  Cieszynski further contends that even if the ALJ did not find Dr. Linford's report incomplete, he still had a duty to recontact the physician because he found it inadequate or unsatisfactory, as the court of appeals found in *Paul*.

But *Paul* presents a different situation than that presented in this case.  In *Paul*, the ALJ discounted a consultative examiner's opinion because it was not consistent with the record, based on a one-time examination, and vague concerning specific functional limitations.  *Paul*, 760 F. App'x at 464.  In its unpublished opinion, the Seventh Circuit questioned the ALJ's reasoning because it found the consultative report in question "sufficiently specific" and consistent with the record.  *Id.*  Here, apart from noting "degenerative changes" throughout Cieszynski's lumbar spine, Dr. Linford's report included only normal findings that did not explain his statement that she would not tolerate prolonged sitting, standing, or heavy lifting repetitively.  Therefore, the ALJ reasonably concluded that Dr. Linford's opinion was unpersuasive and unhelpful, and it provided the ALJ with no obvious reason to recontact Dr. Linford.  *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *Ruenger v. Saul*, 2020 WL 4192344, at *4 (E.D. Wis. July 21, 2020) (ALJ reasonably gave little weight to consultative examiner's opinion that was inconsistent with examiner's own findings).

Further distinguishing Cieszynski's case from *Paul* is that the court in *Paul* found that the ALJ committed reversible error with respect to all of his reasons for discounting the examiner's opinion. *Id.* at 464-65. As discussed above, the ALJ's finding that Cieszynski obtained little or no treatment for her back after June 2016 is well-founded.

Accordingly, the ALJ did not commit reversible error in deciding to give Dr. Linford's opinion little weight.

**B. Dr. Pushkash's Statement**

In his January 27, 2014 psychological report, Dr. Pushkash assigned Cieszynski a Global Assessment Functioning score of 45, indicating serious symptoms.[4] Dr. Pushkash nonetheless found that Cieszynski has the intellectual capabilities to comprehend, recall, and follow through on instructions; her ability to concentrate and persist on tasks was not seen to be significantly impaired during the present assessment; and it is likely that she would be able to appropriately relate to supervisors and coworkers in a work environment because she gets along well socially. AR 407. Dr. Pushkash also stated in his findings that Cieszynski describes difficulty effectively coping with day-to-day stress despite taking psychotropic medication. *Id.* Cieszynski argues that this last statement, combined with her GAF score, shows that Dr. Pushkash believes that her anxiety and depression pose severe problems. She criticizes the ALJ for not recognizing this aspect of Dr. Pushkash's opinion. *See Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018) (ALJ erred in implicitly rejecting recommendation suggesting further walking limitation that

---

[4] Cieszynski points out that a GAF score of 45 correlates not only with serious symptoms, but also "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

contradicted ALJ's RFC finding); *Huber v. Berryhill*, 732 Fed. App'x 451, 455 (7th Cir. 2018) (ALJ erred by not considering consultative examiner's opinion that claimant had trouble standing and walking).

The Commissioner argues that Dr. Pushkash's statement about Cieszynski's coping difficulties is not a medical opinion because it simply records what Cieszynski had told the doctor. *See Karr*, 989 F.3d at 512 ("[A]n ALJ does not owe any deference to the portion of a treating physician's opinion based solely on the claimant's subjective complaints."); *Jozefyk v. Saul*, 2020 WL 5876063, at *6 (E.D. Wis. Oct. 2, 2020) (statement accompanied by phrase "per patient's report" is neither medical opinion nor "entitled to . . . greater weight than any other statement" by claimant, who "might as well have filled out the form himself"). As for the GAF score, the Commissioner argues that it was reasonable for the ALJ to give it little weight in light of Pushkash's assessment of Cieszynski's functional abilities. *See Sambrooks v. Colvin*, 566 Fed. App'x 506, 511 (7th Cir. 2014) ("[A] GAF score is nothing more than a snapshot of a particular moment."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (noting that an ALJ is not required to assess work-related limitations on the basis of a GAF score, which is not a reflection of the clinician's opinion of functional capacity).

Contrary to Cieszynski's contention, the ALJ did not ignore crucial parts of Dr. Pushkash's opinion. He discussed the statement concerning her coping difficulties and the GAF score. AR 718. The ALJ correctly explained that there is no standardized methodology for assigning a GAF score: it is a highly subjective assessment. Because a GAF score represents a clinician's judgment about mental functioning at a particular moment in time, a single score does not provide a reliable longitudinal picture of a claimant's mental functioning. *Id.* The ALJ

reasonably concluded that what mattered for the RFC were the diagnoses and work limitations that Dr. Pushkash assessed given her numerous nearly normal mental status examinations and treatment records.

A review of Dr. Pushkash's full report reveals that Cieszynski described what Dr. Pushkash believed to be anxiety and severe, recurring major depression. AR 404-07. The GAF score that he assessed reflected those diagnoses. However, despite these conditions and the symptoms that Cieszynski reported, Dr. Pushkash stated the opinion that Cieszynski was able to follow instructions, concentrate and persist on tasks, and relate appropriately to supervisors and coworkers. During his evaluation, Dr. Pushkash found that Cieszynski was cooperative, maintained good eye contact, exhibited normal social responsiveness, did not exhibit delusional thinking or paranoia, and had unremarkable results on her cognitive testing. AR 404-07. He did not identify any limitations with respect to Cieszynski's coping difficulties. Moreover, Cieszinski has not identified any limitations that the ALJ overlooked or should have included. *See Karr*, 989 F.3d at 513; *Loveless*, 810 F.3d at 508. Accordingly, I conclude that the manner in which the ALJ dealt with Dr. Pushkash's statement about Cieszynski's coping difficulties does not constitute reversible error.

**ORDER**

IT IS ORDERED that the that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Lora Lynn Cieszynski's application for disability benefits, is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 13th day of April, 2022.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge

14