IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LORA LYNN CIESZYNSKI,

              OPINION AND ORDER
      Plaintiff,

  v.

                  21-cv-10-slc

KILOLO KIJAKAZI,
Commissioner of Social Security,

      Defendant.

On April 14, 2022, the court issued an order affirming the Commissioner of Social Security's decision denying plaintiff Lora Lynn Cieszynski's application for disability insurance benefits and supplemental security income. Dkt. 39. Cieszynski appealed, and the Court of Appeals for the Seventh Circuit vacated this court's judgment and remanded the case to the agency for further proceedings. Dkt. 48. Now before the court are Cieszynski's three motions for an award of attorney fees in the total amount of $39,060.55 under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412: (1) a request of $36,835.21 for 161.05 hours of attorney work (94.1 hours for Attorney Dana Duncan and 66.95 hours for Attorney Vincent Angermeier) and 6.9 hours of paralegal work from 2020 to 2023[1], dkt. 49; (2) a supplemental request of $2,847.03 for the 12.9 hours that Attorney Duncan spent responding to the Commissioner's opposition, dkt. 58; and (3) a supplemental request of $984.50 for the 4.4 hours that Attorney Angermeier spent reviewing the Commissioner's opposition and Cieszynski's reply brief, dkt. 59.

The Commissioner opposes all three motions, contending that Cieszynski is not entitled to EAJA fees because the Commissioner's position was substantially justified, and arguing in the

---

[1]This amount reflects a voluntary reduction of 8.01 hours for Attorney Angermeier. *See* Pltf.'s reply br., dkt. 57 at 31.

alternative that the court should award no more than $12,000 in fees because the fee request is excessive.

For the reasons stated below, I conclude that the Commissioner's pre-litigation conduct— specifically the administrative law judge's decision—was not substantially justified. However, I agree with the Commissioner that the time billed for the litigation in this court and the court of appeals was excessive and atypical for cases of this sort. Therefore, I will grant Cieszynski's motion for attorney fees in the total amount of $24,637.52, with $7,721.38 going to Attorney Angermeier and $16,916.14 going to Attorney Duncan.

## OPINION

The EAJA provides "reasonable fees and expenses of attorneys" to the prevailing party in court cases brought against the Commissioner. 28 U.S.C. § 2412(b). Therefore, Cieszynski is entitled to attorney fees only if: (1) she was a prevailing party; (2) if either the government's prelitigation conduct or litigation position lacked substantial justification; (3) there are no special circumstances that would make an award unjust; and (4) the application for fees was timely filed with the court. § 2412(d)(1)(A)-(B); *Cunningham v. Barnhart*, 440 F.3d 862, 863 (7th Cir. 2006). In addition, an award of attorney fees under the EAJA must be reasonable, 28 U.S.C.§ 2412(d)(2)(A), and parties seeking fees are "expected to exercise reasonable billing judgment." *Jensen v. Berryhill*, 343 F. Supp. 3d 860, 863 (E.D. Wis. 2018) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.")). The Commissioner opposes the award of fees on the ground that the government's position was substantially justified and the amount of fees requested is both unreasonable and excessive.

### I. Substantial Justification

The Commissioner bears the burden of proving that both her prelitigation conduct, which includes the ALJ's decision, and her litigation position had reasonable factual and legal bases and a reasonable connection between the facts and her legal theory. *Cunningham*, 440 F.3d at 863-64 (internal citations omitted); *Anthony G. v. Kijakazi*, No. 421CV04220, 2023 WL 6879827, at *2 (C.D. Ill. Oct. 18, 2023). Ultimately, the standard of substantially justified is satisfied if there is a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action." *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992); *see also Pierce v. Underwood*, 487 U.S. 552, 565-66 and n. 2 (1988) (A position must be "justified to a degree that could satisfy a reasonable person" but can be justified even if it is incorrect, as long as "a reasonable person could think it correct."). Additionally, a court's ruling on the merits of the case does not determine whether the government's position was substantially justified: "Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose." *Pierce*, 487 U.S. at 569. However, because a district court makes only one determination for the entire civil action, fees may be awarded in cases where the Commissioner's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified, and vice versa. *See Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994).

In this case, I affirmed the Commissioner's denial of benefits because I found that the ALJ had not erred in evaluating the medical opinions of her primary care physician, Dr. Bruce Boyd, and consultative examiners, Dr. Eric Linford and Dr. Mark Pushkash. Dkt. 39. Cieszynski's appeal to the Seventh Circuit focused only on the opinions of Drs. Boyd and Linford. Dkt. 48 at 5. With respect to those opinions, I concluded that the ALJ had provided two well-founded reasons for discounting them: (1) they were inconsistent with Cieszynski's course of treatment, which included receiving some benefit from steroid

3

injections, chiropractic treatments, and medication, and no recommendation for surgery or other more aggressive treatments; and (2) Cieszynski received little or no treatment for back pain after June 2016, when she walked out of a pain management clinic after it refused to give her narcotic medication. Notably, Cieszynski had not raised any challenge to the ALJ's second reason. In addition, I rejected Cieszynski's argument that the ALJ should have recontacted Dr. Linford given the ALJ's additional criticism that Dr. Linford did not provide any specific limitations or explain the rationale for his conclusions, finding there was no obvious reason to believe that the report was incomplete.

On appeal, the Seventh Circuit noted that Cieszynski's appellate arguments primarily addressed the way in which the ALJ decided which doctors' opinions to embrace or reject. First, the court of appeals held that the ALJ failed to apply the treating physician rule in 20 C.F.R. § 404.1527(c) because neither of reasons given by the ALJ for rejecting Dr. Boyd's opinion qualified as "good":

- The ALJ pointed to appointment notes reporting that Cieszynski felt that her medications and three chiropractic visits had helped, but he did not attempt to reconcile this evidence with Cieszynski's testimony unequivocally denying any lasting benefit from the chiropractic sessions and medical records reporting that Cieszynski experienced significant pain and limitations even after treatment.

- The ALJ overlooked the fact that Dr. Boyd's letter made clear that even though the steroid injections and medications provided "some moderation" of symptoms, Boyd believed that the MRIs, examination, and medical history demonstrated that Cieszynski could do only part-time work, and even that much with many restrictions.

- Cieszynski's belief that only prescription opioids sufficed (whether because of their effectiveness or a dependency) is not inconsistent with her having pain and other symptoms that made full-time work impossible. Moreover, the ALJ did not explain what kind of treatment that he expected her to undergo.

4

- Although the ALJ was not required to ask about Cieszinski's lack of treatment, the fact that he cited her lack of treatment as a reason to reject Dr. Boyd's opinion without finding out why she stopped is problematic.

- The ALJ should have expressly considered the factors listed in § 404.1527(c) (length, frequency, nature, and extent of treatment relationship, Dr. Boyd's explanation, extent to which opinion is consistent and supported by record) because Dr. Boyd was the only doctor who interpreted the results of two MRIs taken in 2014.

Second, the court of appeals found that even though it was a closer call, the ALJ erred in "brushing aside" Dr. Linford's opinion because:

- The ALJ had a duty to develop a fair and full record under 20 C.F.R. § 404.1519p if he did not receive an adequate report from an examining consultant.

- The ALJ did not provide a "good explanation" for why he took the unusual step of giving little weight to the opinion of an agency examining physician such as Dr. Linford.

Although I agree with the Commissioner that it was reasonable to assume during litigation that the ALJ's evaluation of the medical opinions was sufficient, Cieszynski correctly argues that an ALJ's failure to comply with rules and regulations, and an ALJ's disregard or mischaracterization of evidence is the type of pre-litigation conduct that qualifies as a lack of substantial justification.  *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004).  Here, the court of appeals made clear that the ALJ did not merely fail to articulate his consideration of the evidence but violated federal regulations regarding the analysis of a treating physician opinion and the duty to develop a fair and full record.  *See, e.g.*, dkt. 48 at 7 (discussing "sense of an overall inattention to the requirements for considering medical opinions").  Moreover, the court of appeals was concerned with the ALJ's apparent disregard of the importance of the 2014

MRIs, which only Dr. Boyd interpreted. Accordingly, I find that the Commissioner has failed to show that the ALJ's decision was substantially justified in this case.

## II. Fee Amount

Cieszynski has submitted an itemization of attorney and paralegal time spent in litigating her case in this court and the court of appeals. *See* dkts. 49, 50-3, 50-4, 58, and 59. As the fee applicant, Cieszynski bears the burden of establishing that her requested fees are reasonable. *Hensley*, 461 U.S. at 433.

Cieszynski's case has been pending in one forum or another since 2013, when she originally filed her application for benefits, but she filed her appeal in the instant case in this court on January 7, 2021. Attorney Angermeier represented Cieszynski at the district court level until Attorney Duncan took over her appeal to the Seventh Circuit in May 2022.

Attorney Angermeier spent 75 hours from November 2020 through March 2023 at hourly rates ranging between $193.75 and 223.75, and an additional 4.4 hours in September 2023 at $223.75/hr preparing the EAJA reply brief, for a total of $16,532.87. Attorney Duncan states that he and his paralegal spent 101 hours (39.50 hours of attorney time at $216.37/hr, 54.6 hours of attorney time at $220.70/hr, and 6.9 hours of paralegal time at $100/hr) at the appellate level, and an additional 12.9 hours of attorney time at $220.70/hr preparing the EAJA reply brief, for a total of $24,133.87. The Commissioner does not challenge the hourly rates, but she contends that the amount of hours that the two attorneys spent on various tasks was unreasonable, excessive, and/or duplicative.

### A. Attorney Angermeier's Time

The Commissioner points out that the 75 hours Angermeier spent working on Cieszynski's appeal of the ALJ's decision to this court far exceeds the reasonable amount of time for attorneys to spend working on a social security appeal, which this court has identified as 40 to 60 hours. *See Hughes v. Saul*, 18-cv-378-slc, 2020 WL 3316093, at *2 (W.D. Wis. June 18, 2020) (collecting cases).  The Commissioner argues that 75 hours is particularly excessive when compared to the 27 hours Angermeier spent working on Cieszynski's first district court appeal in 2017 and 2018, which resulted in an EAJA fee award of $5,088.75.  *See* dkt. 54-1.  In addition, the Commissioner contends that many of Angermeier's specific time entries are unreasonable:  6.8 hours to evaluate the administrative decision to decide whether to appeal, 29.7 hours to write a 22-page opening brief (9.3 of those hours focused on the medical facts and administrative proceedings that had been summarized in briefs in the earlier litigation), 29.5 hours to write a 16-page reply brief, and 1.8 hours of work following the Seventh Circuit's remand order, which is not covered by the EAJA.  The Commissioner also points out that 3.9 hours is excessive for Attorney Angermeier's review of the Commissioner's 22-page response to the ESJA petition given that Attorney Duncan also spent 3.9 hours reviewing the response and another 9 hours researching and drafting the reply brief.

Cieszynski's counsel argues that the issues surrounding Dr. Boyd's opinion and the ALJ's duty to contact Dr. Linford for further information were trickier than in the prior appeal.  They also point out that it has become harder for plaintiffs to prevail on appeal in the Seventh Circuit, which resulted in counsel spending more time preparing briefs and reviewing the record.  That said, Angermeier does not object to two reductions:  3.4 hours for evaluating the need for an appeal in November 2020, and 4.65 hours for drafting the fact section of the opening brief in October 2021.  This leaves 66.95 hours for the district court

litigation and 4.4 hours for the EAJA petition, or a total of 71.35 hours, which exceeds the standard range for hours worked on Social Security litigation in this circuit.

Contrary to counsel's assertion, this case involved limited challenges to two medical opinions, both of which had been the subject of Cieszynski's previous appeal in this court, and which should not have required extensive research or factual analysis. *See Cummings v. Berryhill*, No. 14 CV 10180, 2017 WL 926766, at *1 (N.D. Ill. Mar. 8, 2017) ("[C]ourt considers factors such as the complexity of the case, the number and type of issues raised, and the size of the administrative record.") (internal citations omitted). The administrative record is a little over 1100 pages, but neither the opening brief nor reply brief was unusually long, and half of the opening brief was devoted to a recitation of the factual and procedural history of the case, which had been discussed in conjunction with Cieszynski's previous appeal. I also am not persuaded that Cieszynski's second appeal was significantly trickier than her first one. In fact, the first appeal included at least two challenges not raised in this case related to concentration, persistence, and pace and Cieszynski's subjective complaints. *See* 2019 Br., dkt. 29-1. Finally, even though it may have been reasonable for Angermeier to weigh in on the EAJA reply brief, 4.4 hours is excessive and largely duplicative of Attorney Duncan's work on that same brief. Accordingly, I will reduce Angermeier's hours to 34.4 hours for the district court litigation and to 2 hours for the EAJA reply brief. Because Attorney Angermeier had different hourly rates for each year he worked on this case, it is necessary to delineate how many hours were spent in each year. To this end, I will allow Angermeier 3.4 hours for 2020 at $193.75/hr (or $658.75); 25 hours for 2021 at $203.75/hr (or $5,093.75); 6 hours for 2022 at $220.00/hr (or $1,320); and 2.9 hours for 2023 at $223.75/hr (or $648.88), for a total of $7,721.38.

## B. Attorney Duncan's Time

The 94.1 hours of work that Attorney Duncan performed at the appellate level also exceeds the reasonable amount of time attorneys spend working on social security appeals in this circuit. The Commissioner takes issue with the amount of time that Duncan spent drafting and editing the 48-page opening brief (34.8 hours) and 24-page reply brief (25.3 hours), and the 9.3 hours spent researching and writing about the substantial justification standard for the EAJA petition in August 2023.

With respect to the opening brief, Duncan spent 10.9 hours writing the statement of the case, 9.2 hours drafting the introduction and applicable law sections and arguments about the state-agency experts and Dr. Boyd's opinion, another 7.5 hours drafting arguments about Dr. Boyd's and Dr. Linford's opinions, and 7.2 hours editing and rewriting. However, six pages of that brief are devoted to an argument about the state agency opinions, which the court of appeals found that plaintiff had waived by not raising it in the district court. *See* dkt. 54-4 at 32-39. In addition, Duncan had the benefit of the statement of the case and legal arguments contained in Angermeier's district court brief. Similarly, eight pages of the appellate reply brief addressed the waived argument, *see* dkt. 54-5 at 11-20, and the eight-page discussion of Dr. Boyd's opinion is substantially similar to the discussion in the opening brief, *compare* dkt. 54-4 at 39-50 *with* dkt. 54-5 at 20-28.

Counsel contends that he did not merely cut and paste his arguments and that even though the state agency physician argument was waived, it was still important because the court of appeals noted that "the ALJ's willingness to accept the opinions of nonexamining physicians who never saw the most recent MRIs underscores the significance of his rejection of the opinions of the two examining doctors." Dkt. 48 at 8. However, the amount of time spent drafting the appellate briefs under the circumstances present in this case was excessive, particularly with respect to introduction, statement of the case, and the waived argument. Accordingly, I will reduce Attorney Duncan's time by 20 hours and approve the following:

9

29.5 hours for 2022 at $216.37/hr (or $6,382.92); and 44.6 hours for 2023 at $220.70/hr (or $9,843.22), for a total of $16,226.14 for attorney time. An additional $690 is approved for the 6.9 hours of paralegal time.

C. **Conclusion**

EAJA fees belong to the plaintiff as the prevailing party, not to her attorneys, and the EAJA award is subject to offset to satisfy any pre-existing debt that the plaintiff may owe the United States. *Astrue v. Ratliff*, 560 U.S. 586 (2010). However, if there is no pre-existing debt, then the plaintiff may assign the fee award directly to her attorneys, *see Mathews-Sheets v. Astrue*, 653 F.3d 560, 565 (7th Cir. 2011), *overruled on other grounds by Sprinkle v. Colvin*, 777 F.3d 421 (7th Cir. 2015), which Cieszynski has done in this case, *see* dkts. 50-1 and 50-2, at 2. After entry of this order, if counsel for the parties can verify that Cieszynski owes no pre-existing debt subject to offset, then the Commissioner will direct that $7,721.38 be paid to Attorney Angermeier and $16,916.14 be paid to Attorney Duncan, pursuant to the EAJA assignments signed by Cieszynski and her counsel.

ORDER

IT IS ORDERED that plaintiff Lora Lynn Cieszynski's motion for attorney fees, dkt. 49; second motion for attorney fees, dkt. 58; and third motion for attorney fees, dkt. 59, are GRANTED in part and DENIED in part as follows:

1. The court approves fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), in the total amount of $24,637.52, with $7,721.38 paid to Attorney Vincent Angermeier and $16,916.14 paid to Attorney Dana Duncan.

2. If counsel for defendant can verify that plaintiff owes no pre-existing debt subject to offset, defendant will direct that the award be made payable to plaintiff's attorneys in the above-specified amounts pursuant to the EAJA assignments signed by plaintiff and her attorneys.

Entered this 30th day of November, 2023.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge